1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7    BRIAN WHITAKER,                          Case No.  21-cv-00679-EMC
8                  Plaintiff,
9          v.                                 ORDER GRANTING DEFENDANTS'
                                              MOTION TO DISMISS FIRST
10   JOSE A MONTES, et al.,                    AMENDED COMPLAINT
11                 Defendants.                 Docket No. 29
12
13
14

United States District Court
Northern District of California

15         Plaintiff Brian Whitaker, a disabled individual who uses a wheelchair for mobility, has

16   sued Defendants Jose A. Montes, Maria G. Montes, and Villa Montes Hotel, L.P. (collectively, the

17   "Hotel").  According to Mr. Whitaker, the Hotel does not comply with federal and state disability

18   law because there is "insufficient information [on the Hotel website] about the accessible features

19   in the 'accessible rooms' at the Hotel to permit him to assess independently whether a given hotel

20   room would work for him."  FAC ¶ 18.  Currently pending before the Court is the Hotel's motion

21   to dismiss the operative first amended complaint ("FAC").

22         Having considered the parties' briefs and the oral argument of counsel, the Court hereby

23   **GRANTS** the motion to dismiss the ADA claim and declines supplemental jurisdiction over the

24   Unruh claim.

25              **I.      FACTUAL & PROCEDURAL BACKGROUND**

26   A.    Prior Order Granting Motion to Dismiss

27         The Court previously granted the Hotel's motion to dismiss the original complaint because,

28   based on information of which it could take judicial notice (*i.e.*, the URL provided in the

complaint), the Hotel website contained sufficient information related to accessibility.  *See* Docket No. 25 (Order at 2).  However, it gave Mr. Whitaker leave to amend based on his contention that, "several weeks before he filed the complaint, he or someone on his behalf visited the website for the Hotel and saw [different] website information," which was much more limited in nature – and, "at some point thereafter, Defendants changed their website to include more information on accessibility."  Docket No. 25 (Order at 2-3).  The Court noted that, "[a]lthough Defendants have argued that there could be no federal claim because the ADA only allows for injunctive relief, and the website currently complies with the ADA and its regulations, the Court does not prejudge any argument of mootness other than to note that it will have to assess the likelihood of Defendants returning to a noncompliant website should a mootness issue arise."  Docket No. 25 (Order at 3).

B.     <u>FAC</u>

Following the Court's order, Mr. Whitaker filed his FAC.  The main allegations in the FAC are as follows.

Mr. Whitaker is a quadriplegic as a result of a spinal cord injury.  He uses a wheelchair for mobility.  *See* FAC ¶ 1.  On January 6, 2021, he went to the website at https://www.choicehotels.com/california/san-bruno/ascend-hotels to book a room at the Hotel.  *See* FAC ¶ 16.  "[T]here was insufficient information about the accessible features in the 'accessible rooms' at the Hotel to permit him to assess independently whether a given hotel room would work for him."  FAC ¶ 18.  For example, there was no information about whether guestroom toilets have grab bars.  *See* FAC ¶ 19.  Also, there was no information about sink accessibility – *e.g.*, whether there is adequate knee clearance.  *See* FAC ¶ 20.  In addition, there was no information about whether doorways are at least 32 inches wide.  *See* FAC ¶ 21.

///
///
///
///
///
///

United States District Court
Northern District of California

1    According to Mr. Whitaker, "[t]his is what the sub folder 'Accessible Amenities' section

2    looked like on or about the time Plaintiff visited it":



15   FAC ¶ 22.  Mr. Whitaker notes that he "does not need an exhaustive list of accessibility features";

16   however, there should be information about "the core accessibility features in enough detail to

17   reasonably permit individuals with disabilities to assess independently whether a given hotel or

18   guest room meets his accessibility needs."  FAC ¶ 27.

19   Finally, Mr. Whitaker alleges that "Defendants have changed their website since the filing

20   of the original complaint."  FAC ¶ 22.  In other words, the Accessible Amenities section no longer

21   appears the same today.

22   Based on the above allegations, Mr. Whitaker has asserted two claims for relief:

23   (1) a violation of the ADA, *see* 42 U.S.C. § 12182(a) (providing that "[n]o individual

24   shall be discriminated against on the basis of disability in the full and equal

25   enjoyment of the goods, services, facilities, privileges, advantages, or

26   accommodations of any place of public accommodation by any person who owns,

27   leases (or leases to), or operates a place of public accommodation"); and

28   (2) a violation of the Unruh Act.  *See* Cal. Civ. Code § 51(b) (providing that "[a]ll

United States District Court
Northern District of California

3

1    persons within the jurisdiction of this state are free and equal, and no matter what

2    their sex, race, color, religion, ancestry, national origin, disability, medical

3    condition, genetic information, marital status, sexual orientation, citizenship,

4    primary language, or immigration status are entitled to the full and equal

5    accommodations, advantages, facilities, privileges, or services in all business

6    establishments of every kind whatsoever"); *id.* § 51(f) (providing that a "violation

7    of the right of any individual under the federal [ADA] shall also constitute a

8    violation of this section").

9  C.    <u>Defendants' RJN</u>

10      The Hotel has submitted a RJN that shows how its website appears.  (The Hotel does not

11  shed any light on whether the website ever appeared to look as Mr. Whitaker claims.  Nor does the

12  Hotel indicate whether the website was ever changed and, if so, when.)  Mr. Whitaker appears to

13  be correct in arguing that the RJN provides the same website pages that the Hotel previously

14  submitted to the Court for consideration in the prior 12(b)(6) proceeding.

15      According to the Hotel, it "provides information about accessibility features in two

16  separate sections of its website": (1) on webpage dedicated to descriptions of the guestrooms and

17  (2) on the "Accessibility Amenities" webpage.  Mot. at 3.  Below are the two webpages:

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

United States District Court
Northern District of California



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California



Accessible Room

## 1 King Bed

Accessible, No Smoking






Accessible · Hearing Accessible · Mobility and Hearing Accessible · Roll-In Shower

Max Occupancy: 2 Guests

Hide Room Amenities ∧

**Additional room amenities:**

- Hair Dryer
- Iron and Ironing Board
- Microwave
- Safe
- Free Continental Breakfast
- Down Pillows
- iPod Docking Station

- Make-up mirror
- Pillow-Top Mattress
- Free WiFi
- Robes
- Coffee Maker
- Phone Local Charge
- Wake-Up Service

**Accessible room amenities:**

- Hearing Accessible
- Mobility and Hearing Accessible
- Roll-In Shower
- Wheelchair Accessible
- Visual Telephone Alert
- Visual Doorbell Alert
- Lowered Wall and Door Features
- Lower Deadbolts/Locks

- Lowered Closet Rod
- Vision Impaired
- TV with Closed Captioning
- Doors have 32" Clear Width
- Wheelchair Accessible Shower Hanger
- Toilet with Grab Bars
- Portable Tub/Shower Seat
- Hand Rails-Bathroom
- Folded Seat

Me
Join f
Non-

Boo
Non-

**Accessibility Amenities**

✓ Free Accessible Parking
✓ Accessible public restrooms
✓ Phone for Hearing Impaired
✓ Public entrance is accessible
✓ Hand Rails in the Public Bathroom
✓ Accessible business center
✓ Accessible Features
✓ Route from accessible public entrance to accessible guestrooms
✓ Route from accessible public entrance to registration area
✓ Braille Elevator(s)
✓ Mobility and Hearing Accessible
✓ Vision Impaired
✓ Lower Deadbolts/Locks
✓ Lowered Closet Rod
✓ TV with Closed Captioning
✓ Wheelchair Accessible
✓ Wheelchair Accessible Shower Hanger
✓ Toilet with Grab Bars

✓ Accessible restaurant*
✓ Accessible Fitness Center and/or Spa Center
✓ Accessible Hotel
✓ Accessible ramps
✓ Route from accessible public entrance to business center
✓ Accessible registration desk
✓ Route from accessible public entrance to meeting room/ballroom area
✓ Accessible guest transportation
✓ Braille Coded Exits
✓ Hearing Accessible
✓ Roll-In Shower
✓ Visual Telephone Alert
✓ Visual Doorbell Alert
✓ Doors have 32" Clear Width
✓ Lowered Wall and Door Features
✓ Hand Rails-Bathroom
✓ Folded Seat
✓ Portable Tub/Shower Seat

* Indicates services/amenities that may require an additional cost.

Show Less Amenities

5

## II.    DISCUSSION

In the pending motion, the Hotel's main arguments are as follows:

> (1) As a matter of law, the Hotel's website provides sufficient information on accessibility. *See, e.g.*, Mot. at 16 *et seq.* (arguing that the information sought by Mr. Whitaker is provided and, to the extent he seeks more specificity, that is an unreasonable level of detail).

> (2) Because the website provides sufficient information on accessibility, any dispute between the parties is moot.

The Court already held in the prior 12(b)(6) proceedings that the website pages, as reflected in the Hotel's RJN, provide sufficient information about accessibility. Therefore, the critical issue for the Court is mootness.

As indicated above, Mr. Whitaker brings two claims for relief: an ADA claim and an Unruh claim. The Court must evaluate mootness as to each claim.

A.    ADA Claim

The Court first addresses whether Mr. Whitaker's ADA claim is moot.

> Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings. Whether "the dispute between the parties was very much alive when suit was filed . . . cannot substitute for the actual case or controversy that an exercise of this [c]ourt's jurisdiction requires." A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the litigation. In other words, if events subsequent to the filing of the case resolve the parties' dispute, [a court] must dismiss the case as moot . . . .

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086-87 (9th Cir. 2011); *see also Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 862 (9th Cir. 2017) ("'The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.'").

In the case at bar, the Hotel's mootness argument is largely based on the ADA claim. Where an ADA claim is based on Title III, as here, it is clear that "[d]amages are not recoverable[;] only injunctive relief is available for violations of Title III." *Wander v. Kaus*, 304

United States District Court
Northern District of California

F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1), which provides that remedies under Title III are the same as those outlined in 42 U.S.C. § 2000a-3(a), which do not permit recovery of monetary damages).  The Hotel contends that, because the current website contains sufficient accessibility information (as the Court previously held), there is nothing more to be gained by Mr. Whitaker; in other words, there is no need for an injunction, and thus, the ADA claim is moot.  *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) (noting that, "[b]ecause a private plaintiff can sue only for injunctive relief (*i.e.*, for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim").

The Hotel acknowledges that, under well established law,

> "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  "If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'"  In accordance with this principle, the standard [the Supreme Court has] announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  The "heavy burden of persuading" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Although recognizing the strict standard above, the Hotel nevertheless contends that it has been met in the instant case.

> Although Plaintiff has alleged that Defendant updated one part of its website to add the detailed information he wanted to see, FAC ¶ 22, he does not allege that Defendant intends to subsequently remove that information or that it has any incentive to do so.  Nor could he. *See* Montes Decl., ¶ 3.  The Hotel invested money in bringing its facilities up to ADA standards and providing ADA-accessible Guestrooms.  Plaintiff does not contend otherwise; he concedes the Hotel provides "accessible" rooms, FAC, ¶ 18, and does not allege any physical barriers or defects in the Hotel's ADA-compliant design and construction, FAC, ¶ 7.
>
> Moreover, Plaintiff's own allegations confirm that the hotel advertises the availability of its accessible features.  Of course it does; the Hotel has every incentive to advertise the specialized amenities in invested in to accommodate disabled guests and no

United States District Court
Northern District of California

incentive to hide them. . . . Defendant has invested additional resources to revise its website to add even more detailed information in more places, as requested by Plaintiff.  Defendant has no incentive now to spend more money having its website revised again to remove the more detailed information now provided there.

Mot. at 6; *see also* Montes Decl. ¶ 3 ("I will obviously not be authorizing any changes to the Hotel's website that removes accessibility information.") (emphasis omitted).

In response, Mr. Whitaker asserts that it is not absolutely clear that the Hotel's wrongful behavior could not reasonably be expected to recur, especially because websites are easily and "constantly retooled by their owners.  Without an injunction forcing [the Hotel] to comply, [it] will be able to let the site become non-compliant again."  Opp'n at 5.

The Hotel's position more persuasive.  It is true that ADA cases finding mootness often turn on whether the modification voluntarily made by the defendant is a physical/structural change.  *See, e.g.*, *Johnson v. Opa Campbell LP*, No. 21-cv-01619-PJH, 2021 U.S. Dist. LEXIS 149211, at *7 (N.D. Cal. Aug. 9, 2021) (noting that "[c]ourts have held that where structural modifications are made, then it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur in the future since structural modification[s] undo the offending conduct," but, "[w]hen considering nonstructural features, . . . courts have found that voluntary remediation of these violations do not moot an issue because the violations could easily reoccur") (internal quotation marks omitted); *Brooke v. Superb Hosp., LLC*, No. 1:20-CV-0103 AWI SAB, 2021 U.S. Dist. LEXIS 61403, at *24 (E.D. Cal. Mar. 29, 2021) (where plaintiff brought an ADA claim on the basis that the hotel did not offer the same room-type choices to disabled persons as it did for persons without disabilities (*i.e.*, accessible suites were not available), noting that the hotel "made a structural change to convert the sole One Bedroom Suite to a King Studio" – even if the "structural change was [not] particularly extensive, i.e. removing a door"; "[t]his is not the same as merely changing or enforcing a written policy, and additional physical alterations would have to be met to revert Room 335 back to a One Bedroom Suite"); *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1110 (N.D. Cal. 2017) (noting that, although it could be inferred that "Starbucks relocated the merchandise displays[,] . . . this is not a structural or permanent architectural change"; "Starbucks has not proven that the display will not be returned to the middle of the store

United States District Court
Northern District of California

1  or other areas where it might block Plaintiff's access to the cashier's counter").

2        But just because a change made by a defendant is nonphysical/nonstructural in nature does

3  not mean that mootness cannot be found.  For example, in *Johnson v. Holden*, No. 5:18-cv-01624-

4  EJD, 2020 U.S. Dist. LEXIS 47946 (N.D. Cal. Mar. 18, 2020), the plaintiff brought suit against

5  the operators of a Shell gas station because, when he visited the station on multiple occasions, the

6  existing van accessible parking spot was blocked by employees' cars and there was an insufficient

7  number of disabled parking spaces.  *See id.* at *2.

8        After being served with the summons and complaint, the defendants immediately took

9  action:

- The defendants told employees that they could not block the disabled parking
  space.

- The defendants placed orange cones at the corners of the disabled parking space to
  ensure that it was usable by disabled persons.

- The defendants installed a "tow away" sign to warn that illegally parked cars would
  be towed.

- The defendants wrote a policy and practice manual for employees which stated that
  reasonable accommodations would be made for disabled persons so long as the
  business would not be fundamentally altered.

- The defendants adopted new policies and checklists regarding the parking space –
  *e.g.*, requiring the store manager to keep track of the ADA van accessible parking
  spot during each day and over the month and taking action as necessary.

- The defendants hired a Certified Access Specialist Property Inspector ("CASp") to
  ensure that the alleged barriers identified in the plaintiff's complaint no longer
  existed and to make other ADA improvements not identified by the plaintiff.  The
  CASp did a site inspection and found no further ADA action was needed with
  respect to the alleged barriers identified by the plaintiff.

- The defendants entered into a contract with a CASp to complete biannual
  inspections for the next three years or more to ensure compliance with the ADA.

United States District Court
Northern District of California

9

1   *See id.* at \*3-6.

2          At summary judgment, the defendants argued mootness based on the actions they had

3   taken to address ADA compliance.  Judge Davila found in their favor, stating that "the pertinent

4   considerations weigh in favor of finding that the violations, even though they pertain to non-

5   structural issues, are not reasonably likely to recur."  *Id.* at \*12.

6              To determine if the facts indicate a danger of future violations,
               courts consider the "bona fides of the expressed intent to comply,
7              the effectiveness of the discontinuance and, in some cases, the
               character of the past violations."

8

9              . . . . Here, Defendants immediately remedied the alleged violations
               after the initiation of the action.  Additionally, Defendants have
10             taken substantial affirmative steps to become compliant and prevent
               future violations.  Upon receiving the Complaint, Defendants hired a
11             CASp to review the site and ensure that Shell fully complied with
               the ADA.  Defendants also took steps to prevent future violations by
12             entering into a three-year contract with a CASp to assess the
               property on a bi-annual basis for compliance.  These affirmative
13             steps indicate that the violations are not reasonably likely to recur.

14             Defendants have no history of violating the ADA.  Plaintiff also has
               not directed the Court to any evidence indicating an intent by
15             Defendants to violate the ADA in the future.  The dearth of evidence
               showing past ADA violations or an intent to violate in the future
16             indicates that future violations are not reasonably likely to occur.

17  *Id.* at \*11-14.

18         In the instant case, the Hotel has made a sufficient showing in support of mootness, even

19  with its heavy burden.  Although the Hotel did not take the breadth of action as the defendants in

20  *Johnson* did, the factors identified in *Johnson* weigh in favor of mootness.  For example, the Hotel

21  has shown a bona fide intent to comply with the ADA.  After being sued, it apparently took

22  prompt action to update its website (assuming, in Mr. Whitaker's favor, that the webpage on

23  accessibility was previously the barebones version as alleged).  Although websites can easily be

24  changed, it still took time, effort, and money for the Hotel to make that change, and now that the

25  website information is up, there is little incentive for the Hotel to take it down.  In addition, as the

26  Hotel notes, it has an incentive to advertise its compliance with the ADA, especially because – as

27  Mr. Whitaker has conceded –  the Hotel is, in fact, ADA compliant

28         Moreover, Mr. Whitaker's merits arguments in his brief suggest that it is fairly unlikely for

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    the Hotel to take down the accessibility information or modify it – *i.e.*, because all that he is

2    asking for is for simple and basic information about the critical areas of hotel/guest room; he is not

3    asking for some kind of comprehensive survey.  If that is the case, then it is (in Mr. Whitaker's

4    own words) "hardly burdensome," Opp'n at 14, for the Hotel to have the accessibility information

5    on its website and it should have little incentive to take it down or modify it.  *See Brooke*, 2021

6    U.S. Dist. LEXIS 61403, at *26 (noting that "there appears to be no utility or benefit to [the hotel]

7    from reverting Room 335 back to a One Bedroom Suite").  Simply put, the Hotel has no incentive

8    to take is accessibility information down and has every incentive to continue to insure its

9    compliance with the ADA if for no other reason than preventing further suit and legal liability.

10        The Court therefore finds the ADA claim moot.

11   B.    Unruh Claim

12        The Court acknowledges that, even if the ADA claim is moot, that does not mean that the

13   Unruh claim is moot.  *See* Opp'n at 5.  Notably, for the Unruh claim, damages are available

14   (including attorney's fees).  *See* Cal. Civ. Code § 52(a) (providing that "[w]hoever denies, aids, or

15   incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for

16   each and every offense for the actual damages, and any amount that may be determined by a jury,

17   or a court sitting without a jury, up to a maximum of three times the amount of actual damage but

18   in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined

19   by the court in addition thereto, suffered by any person denied the rights provided in Section 51");

20   Compl., Prayer ¶ 2 (seeking "[d]amages under the Unruh Civil Rights Act, which provides for

21   actual damages and a statutory minimum of $4,000 for each offense"); *see also Molski v. M.J.*

22   *Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007) (stating that, "[b]ecause the Unruh Act is

23   coextensive with the ADA and [unlike the ADA] allows for monetary damages, litigants in federal

24   court in California often pair state Unruh Act claims with federal ADA claims").

25        The Court, however, declines to retain supplemental jurisdiction over the Unruh claim.

26   Under 28 U.S.C. § 1367(c), a court may decline supplemental jurisdiction where it has "dismissed

27   all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  With the dismissal of the

28   ADA claim, it makes little sense for the Court to proceed with the Unruh claim, particularly given

that this case is at the very early stages of litigation.

### III.      <u>CONCLUSION</u>

For the foregoing reasons, the Court dismisses the ADA claim as moot and declines to exercise supplemental jurisdiction over the Unruh claim.

This order disposes of Docket No. 29.  The Clerk of the Court is ordered to enter a final judgment in accordance with this opinion and close the file in the case.


**IT IS SO ORDERED**.


Dated: November 3, 2021

_____
EDWARD M. CHEN
United States District Judge